IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM A. FABISESKI, | : | CIVIL NO. 3:CV-05-0810 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| CHIEF ELLIOTT, et al., | : | |
| Defendants | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Presently pending is defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 seeking entry of judgment on plaintiff's Fourth Amendment excessive use of force claim, Fourteenth Amendment due process claim, and state law claim of assault and battery against defendant Gilman in his individual capacity.[1] (Doc. 110.) For the reasons outlined below, the motion will be granted.

I. **Statement of Facts**[2]

Plaintiff was involved in an incident on April 23, 2003, which was described in the initial police report by defendant Ronald Alongi ("Alongi"), City of Scranton police officer as follows:

> In the City of Scranton, County of Lackawanna, Commonwealth of Pennsylvania, on Wednesday April 23, 2003 at 1140 hours, myself along

---

[1] In a prior Memorandum and Order addressing defendants' motion to dismiss, a number of plaintiff's claims were dismissed. (Doc. 39, at 9-10.) The claims specified are the only claims that survived.

[2] In addition to the documents provided by the parties, the court has extracted pertinent information from the state court electronic dockets found at http://ujsportal.pacourts.us.

> with Officer Gilman were at the D.P.W. Complex, 800 blk. Providence Road when we heard a police radio transmission that an off duty officer, later learned to be Officer R. McKeon, was following a stolen vehicle on Providence Road heading towards our location. It was transmitted that the stolen vehicle was a red Camry and that the off duty officer was behind him in a white vehicle.
>
> Myself and Officer Gilman exited the Complex on foot anticipating stopping all traffic in turn stopping the stolen vehicle. While stopping traffic we stopped a pick up truck which was the lead vehicle then all traffic stopped behind it including the suspect vehicle behind it. I approached from the drivers side with my firearm drawn yelling at the driver, "Police, stop". The suspect leaned over and then began turning towards the right to go around the truck in front of him. Officer Gilman was now confronted with the suspect vehicle gunning towards him and the stopped truck next to him. Officer Gilman, with his firearms drawn also yelled, "Police, stop". Officer Gilman began backing up with the suspect attempting to drive at him. Officer Gilman fired two rounds at the suspect to [sic] in an attempt to stop the suspect from running him down. The shots caused the suspect to veer to the right around Officer Gilman.
>
> We ran back to our cruiser while Officer McKeon continued to follow and update the Communications Center via Cellular Phone. The suspect fled north on N. Seventh Avenue and entered onto the North Scranton Expressway towards Main Avenue. He then traveled north on N. Main Avenue and east on Potomac Street entering Townhouse Apartments where we proceeded to. Officer McKeon was pointing behind the 500 building where we saw the suspect running south. We drove to the end of the 100 building and came around as he came towards us and took him into custody.

(Doc. 111, at 7.) Defendant Patrick Gilman, City of Scranton police officer, made the

following statement:

> On 4-23-03 at 1140 hrs. a call came over the radio from Com Center that an off duty police officer was following a stolen vehicle on Providence. Myself and Officer Alongi were at the DPW Garage on 800 Providence Road when we heard that the stolen vehicle was traveling south on Providence Road in our direction. We exitted [sic] the garage on foot and

2

> stopped a truck which was traveling in front of the stolen vehicle. Officer Alongi approached the stolen vehicle on the driver side and I went around the passenger side of the truck with my side arm drawn. I could hear Officer Alongi giving a command to the suspect who was stopped in the vehicle at this time. As I approached the rear of the truck, I moved left away from the truck so I could see the suspect. At this time the stolen vehicle came around the passenger side of the truck. There was plenty of room for the stolen vehicle to pass. I made eye contact with the suspect and yelled "Police stop". At which time he came straight at me with the stolen vehicle. In an attempt to get out of his way, I began to run backwards away from the charging vehicle, but backed into the truck which we had stopped in front of the stolen vehicle. The suspect continued to charge at me with the stolen vehicle. At this time I feared for my life and had no where to retreat too [sic]. I fired two rounds at the suspect vehicle. When the second round hit the driverside front window I heard the suspect yell and he swerved right just missing me with the stolen vehicle. He started to slow down still traveling south on Providence Road, then accelerated again, fleeing the scene. Myself and Officer Alongi returned to our patrol vehicle which was parked in the DPW garage. Com Center notified us that the suspect vehicle was now on the 1000 of N. Main Ave with Officer McKeon following it. When we got to N. Main Ave Com Center notified us the suspect had abandoned the stolen vehicle and was now fleeing behind Apartments in Village Park. We entered Village Park and saw Officer McKeon pointing to the suspect who was running behind buildings on townhouse blvd. We continued down townhouse blvd and apprehended the suspect behind building 100 townhouse blvd. without incident.

(Doc. 111, at 9-10.) Defendant Robert McKeon, City of Scranton police officer, reported the following:

> While still travel [sic] north on Providence Road in the 800 blk, and approaching the area where the DPW complex is located I observed Officer Gilman and Officer Alongi coming out from the DPW complex on foot. Both officers walked into the lane of travel of the stolen vehicle, both officers put both hands up signaling for traffic to stop. A truck which was now in front of the stolen vehicle stopped for the officers. The stolen vehicle also stopped for a brief second with myself behind the stolen vehicle. Then the driver of the stolen vehicle accelerated at high rate of

3

> speed towards Officers [sic] Gilman. At that point Officer Gilman who attempted to jump away but couldn't because he was caught between the truck which was stopped and the stolen vehicle was coming at him. I then saw officer Gilman draw his weapon in the attempted [sic] to stop the driver of the stolen vehicle from running him down. I then observed the driver of the stolen vehicle bent down to his right while moving towards officer Gilman's direction. At this point I saw Officer Gilman fire his weapon twice and I saw the drivers side window being smashed out.
>
> The driver of the stolen vehicle then fled at a high rate of speed traveling North on 7th Ave and then entered the on ramp to the North Scranton Expressway with this officer following at a safe distance and speed. This officer then observed the stolen vehicle exit at the Main Ave exit and make a right turn off the exit and continued traveling North in the 1000 blk of North Main Ave. It was at this time I lost site of the stolen vehicle and began checking the area of Mt. Vernon Ave by the Townhouse Blvd. Apts. when I noticed the stolen vehicle and the driver exiting the vehicle who was now running from the vehicle and proceeding north on foot behind the Townhouse Apts. At this time several patrol units were on scene, and apprehended the driver of the stolen vehicle.

(Id. at 11.) Plaintiff had suffered two gun shot wounds, one to his left shoulder and one in his upper back. (Id. at 8.) He was transported in an ambulance to a local hospital. (Id.) The Affidavit of Probable Cause, which was executed by defendant Alongi, summarized the above events. Plaintiff's conduct resulted in the following charges:

> Count I: Simple Assault - William Andrew Fabiseski "did attempt to cause or did intentionally, knowingly or recklessly cause bodily injury to Officer Gilman to wit; the defendant did attempt to strike Officer Gilman with a 1989 Toyota Camry he was driving while trying to flee from police."
>
> Count II: Recklessly Endangering Another Person - William Andrew Fabiseski "did recklessly engage in conduct which placed or may have placed another person in danger of death and serious injury, in that the said defendant, William Andrew Fabiseski did drive a 1989 Toyota Camry

4

> directly at Officer Gilman."
>
> Count III: Receiving Stolen Property - William Andrew Fabiseski "did intentionally receive, retain or dispose of the property of another, to wit; 1989 Toyota Camry . . . , knowing it to have been stolen, or believing it probably to have been stolen, without the intent of restoring it to the owner."

(Id. at 22-23.) On September 29, 2003, Plaintiff entered a guilty plea to all charges. During the Guilty Plea Colloquy, plaintiff admitted that he "did engage in conduct which may have placed another or did place another in fear of serious bodily injury," and that he "did attempt to cause bodily injury to another person which may have placed another in danger of injury." (Id. at 26-27.) Plaintiff initialed each page and affirmed, by affixing his signature, that he was "aware of the full implications of pleading guilty and nevertheless wish[ed] to plead to the specified offense(s). I further affirm that my signature on this Guilty Plea Colloquy and initials on each page of this document are true and correct." (Id. at 27.) According to the Transcript of the Plea Proceedings, he testified that he understood that he did not have to plead guilty and that he had the right to go to trial. (Id. at 29.)

On November 13, 2003, plaintiff moved to withdraw the plea. (Id. at 30.) However, on January 29, 2004, the date scheduled to hear the motion, plaintiff withdrew his motion to withdraw the guilty plea. (Id.) On September 17, 2004, he was sentenced to a term of imprisonment of eighteen months to three years. (Id.)

As noted by defendants, "plaintiff's guilty plea and conviction arising from this

incident . . . have never been set aside or overturned by any Court. . . ." (Doc. 112, at 3.) On June 27, 2005, he filed a petition pursuant to the Post Conviction Collateral Relief Act ("PCRA"), 42 PA.CONS. STAT. §§ 9541-9545 (1982). (Id. at 29.) The petition was found to be without merit and was dismissed on May 11, 2006. (Id. at 34-39.) He did not pursue this PCRA petition any further. However, on October 29, 2007, he filed a second PCRA petition. This petition was denied as untimely. See Court of Common Pleas of Lackawanna County Docket, Commonwealth of Pennsylvania v. William A. Fabiseski, Docket Number: CP-35-CR-0001331-2003 and CP-35-CR-0001332-2003. Plaintiff appealed to the Superior Court of Pennsylvania. On May 28, 2008, the appeal was dismissed for failure to file a brief. See Superior Court of Pennsylvania Docket, Commonwealth of Pennsylvania v. William A. Fabiseski, Docket Number 2179 MDA 2007.

## II. Standard of Review

"Summary judgment serves as a minimal but important hurdle for litigants to overcome before presenting a claim to a jury." Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 314 (M.D. Pa. 2004). Faced with such a motion, the adverse party must produce affirmative evidence, beyond the disputed allegations of the pleadings, in support of the claim. FED. R. CIV. P. 56(e); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Corneal v. Jackson Township, 313 F. Supp. 2d 457, 464 (M.D. Pa. 2003), aff'd, 94 Fed. Appx. 76 (3d Cir. 2004). "Such affirmative evidence--regardless

of whether it is direct or circumstantial--must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001) (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989). Only if this burden is met can the cause of action proceed. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see FED. R. CIV. P. 56(c), (e).

### III. Discussion

Under Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), if a favorable judgment on a §1983 damages claim would "necessarily imply the invalidity" of a plaintiff's conviction or sentence, the claim must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. As the Court explained in Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005), "a state prisoner's § 1983 action is barred (absent prior invalidation)- no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)- if success in that action would necessarily demonstrate the invalidity of the confinement or its duration." Thus, the question before the Court is whether a finding in favor of plaintiff on his Fourth Amendment excessive force (unreasonable seizure) and/or Fourteenth Amendment due process claim (false sworn statements) necessarily implies the invalidity of his

7

convictions ascertained by pleas of guilty.

A. Excessive Use of Force

The threshold inquiry in an excessive force case is whether "the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations.'" Graham v. Connor, 490 U.S. 386, 397 (1989); see Brower v. County of Inyo, 489 U.S. 593, 599 (1989). The proper application of the reasonableness test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. The Third Circuit has added other relevant factors, including, "the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." Sharrar v. Felsing, 128 F.3d 810, 821 (3d Cir. 1997) (citations omitted). The court must consider whether a judgment in favor of plaintiff on the excessive force claim would invalidate his guilty pleas to simple assault and recklessly endangering another. In the case of Nelson v. Jashurek, 109 F.3d 142 (3d Cir.1997), the plaintiff was convicted in state court of simple assault and resisting arrest in violation of a Pennsylvania statute,

"which provides that a person is guilty of resisting arrest if 'with the intent of preventing a public servant from effecting a lawful arrest [he] creates a substantial risk of bodily injury to the public servant . . . or employs means justifying or requiring substantial force to overcome the resistance.'" Nelson, 109 F.3d at 145. Following his conviction, the plaintiff filed suit pursuant to §1983 against the arresting officer, claiming that the officer used excessive force in effecting his arrest. Id. at 144. The district court dismissed the plaintiff's excessive force claim, finding that Heck barred his claim because a judgment in his favor would invalidate his conviction for resisting arrest. Id. at 144-45. On appeal, the Third Circuit reversed, holding that a finding that the officer used excessive "substantial force" would not imply that the arrest was unlawful. Id. at 145. The court explained,

> Our difficulty with the district court's result is that the fact that [the officer] was justified in using 'substantial force' to arrest [the plaintiff] does not mean that he was justified in using an excessive amount of force and thus does not mean that his actions in effectuating the arrest necessarily were objectively reasonable. In short, there undoubtedly could be 'substantial force' which is objectively reasonable and 'substantial force' which is excessive and unreasonable.

Id.

The instant matter is distinguishable from Nelson. In Nelson plaintiff was only convicted of resisting arrest. In the instant matter, plaintiff pled guilty to Simple Assault of Officer Gilman and Recklessly Endangering Officer Gilman and, in doing so, admitted that he attempted to cause or did intentionally, knowingly or recklessly

cause bodily injury to Officer Gilman while trying to flee from police and that he recklessly engaged in conduct which placed or may have placed Officer Gilman in danger of death and serious injury. (Doc. 111, at 22, 24-27.) It would be inconsistent to find that plaintiff attempted committed a Simple Assault of Officer Gilman and Recklessly Endangered the life of Officer Gilman, while at the same time concluding that the use of force in effecting the arrest was excessive. There is no question that a judgment in plaintiff's favor on this claim would invalidate his convictions for Simple Assault and Recklessly Endangering Another Person and it is undisputed that plaintiff has not had these convictions invalidated, overturned or set aside. Accordingly this claim is barred by Heck.

B. False Sworn Statements

It appears that plaintiff is arguing that defendants did not have probable cause to arrest him in that they "did make false sworn statements, covering up the facts of this shooting." (Doc. 9, at 3, ¶ 21.) It is clearly established under the Fourth Amendment that the police may not make an arrest except upon probable cause. "Probable cause to arrest requires more than mere suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt. Rather, probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be

10

arrested." Orsatti v. New Jersey State Police, 71 F.3d 480, 482-83 (3d Cir. 1995) (citations omitted). For a § 1983 claim based on false arrest, the inquiry is "not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." Dowling v.. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988).

If judgment were to be entered in favor of plaintiff on this claim, it would mean that there did not exist probable cause to arrest plaintiff. By his guilty pleas to the offenses of Simple Assault, Recklessly Endangering Another and Unauthorized Use of a Motor Vehicle, plaintiff admitted that he engaged in the conduct. Therefore, "he would have to negate an element of the offense of which he has been convicted." Heck, 512 U.S. at 487 n. 6; see also Nelson, 109 F.3d at 144. Because it is undisputed that plaintiff's convictions have not been invalidated, his claim is barred.

C. State Law Claims

The Court declines to exercise supplemental jurisdiction over the pendent state law claims. 28 U.S.C. § 1367(c)(3). Those claims will be dismissed without prejudice to any right plaintiff may have to pursue them in state court. In so holding, the Court expresses no opinion as to the merits of the claims.

IV. Conclusion

Based on the above, defendants' motion for summary judgment (Doc. 110) will be granted. An appropriate order follows.

> BY THE COURT:
>
> _____
> JUDGE JAMES M. MUNLEY
> United States District Court

Dated: July 31, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM A. FABISESKI,<br>Plaintiff | : | CIVIL NO. 3:CV-05-0810 |
| | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| CHIEF ELLIOTT, et al.,<br>Defendants | : | |

## ORDER

AND NOW, to wit, this 31st day of July 2008, for the reasons set forth in the foregoing memorandum, it is hereby ORDERED that:

1. Defendants' motion for summary judgment (Doc. 110) is GRANTED.

2. The Clerk of Court is directed to ENTER judgment in favor of defendants and against plaintiff.

3. The Clerk of Court is directed to TERMINATE all pending motions. (Doc. 110, 118).

4. The Clerk of Court is further directed to CLOSE this case.

5. Any appeal from this order is DEEMED frivolous and not in good faith. See 28 U.S.C. § 1915(a)(3).

BY THE COURT:

JUDGE JAMES M. MUNLEY
United States District Court